UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-CV-477-KKC

KARLTON STANLEY                                                                                         PLAINTIFF

v.                              **MEMORANDUM OPINION AND ORDER**

CHARLES SAMUELS, JR., ET AL.                                                              DEFENDANTS

Plaintiff, Karlton Stanley, an individual who is currently confined at the Federal Correctional Institution in Manchester, Kentucky ("FCI-Manchester"), has filed a *pro se* civil rights complaint under 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). He has also filed a motion to proceed *in forma pauperis*, which will be addressed by separate order.

This matter is before the Court for initial screening. 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

To state a claim that is cognizable as a *Bivens* action, the plaintiff must plead two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of federal law. *Bivens*, 403 U.S. at 397.

This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a

court the authority to dismiss a case at any time if the court determines that the action is (i) frivolous or malicious or (ii) fails to state a claim upon which relief can be granted.

## CLAIMS

The plaintiff alleges that the named defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment of the United States Constitution. Specifically, he alleges that Defendant Dr. Ramirez failed to diagnose and properly treat a serious medical problem with his (plaintiff's) back and leg. He claims that Dr. Ramirez's delay in failing to order a diagnostic test caused his condition to worsen. He complains that Defendant Shah failed to authorize timely medical treatment. He claims that as the head administrators of FCI-Manchester, Defendants Samuels and Martin are liable for Ramirez's and Shah's actions and/or failure to act.

## NAMED DEFENDANTS

The plaintiff has named the following defendants and identified their positions as follows: (1) Charles Samuels, Warden of FCI-Manchester; (2) " N. Shah," Health Service Administrator of FCI-Manchester; (3) "R. Ramirez," doctor at FCI-Manchester; and (4) "T. Martin," Assistant Warden of FCI-Manchester. He has not specified the capacity in which he sues the defendants.

## RELIEF REQUESTED

Plaintiff seeks unspecified monetary damages and injunctive relief in the form of an order entitling him to proper medical care.

## ALLEGATIONS OF INSTANT COMPLAINT
### 1. Plaintiff's Claims

The plaintiff attached to his complaint form a handwritten supplement, in which he described the events associated with his medical claim. He alleges that he suffers from a painful lower back

condition which he claims named defendants either refused to treat, or refused to cause to have treated, in a timely manner. He alleges that as a result of the defendants' failure to treat his back condition, he is unable to jog, walk the track, or play basketball, softball, handball, or soccer.

The plaintiff states that on October 17, 2003, he requested medical attention from Dr. Spady with regard to his lower back pain, explaining that at that time he was unable to walk "periodically." Plaintiff states that Dr. Spady recommended that he (plaintiff) undergo a Magnetic Resonance Imaging ("MRI") test in order to detect the cause of the pain. He complains that on November 25, 2003, Dr. Ramirez denied the MRI request. Plaintiff states that on February 4, 2004, Dr. Spady again recommended that an MRI be conducted, but that the request was again "verbally denied." Instead, he was given Ibuprofen. Plaintiff alleges, however, that the next day, February 5, 2004, Dr. Ramirez submitted Dr. Spady's recommendation for the MRI for "appropriate studies exam."

The plaintiff mentions no further activity until June 4, 2004, at which time he states that he requested additional medical attention for his back and leg. He states that on that date, Dr. Spady again resubmitted a request for an MRI. On August 4, 2004, the plaintiff underwent the MRI test. According to the plaintiff, on September 7, 2004, the radiologists ". . .verified the cause of my lower back pains, and leg muscles to be true." The plaintiff attached the three appeals he filed pursuant to the Bureau of Prisons' ("BOP") administrative remedy procedure, 28 C.F.R. §542. 13-15.

2. BP-9 Response from Warden

The plaintiff submitted to Warden Charles E. Samuels a BP-9 "Request for Administrative Remedy." It was dated March 29, 2005.[1] In his Request, the plaintiff stated as follows:

---

[1] The print on the copy of the BP-9 Request, which the plaintiff attached to his complaint, was very faint and was barely legible.

"On about December 20, 2004, I, Karlton Stanley, went to Mrs. Johnson about my scheduled Surgery. Mrs. Johnson told me the Regional Director shall be in next week, to make a decision about approving my surgery. . ."

On April 29, 2005, Warden Samuels responded to, and denied, the plaintiff's BP-9 Request. The warden noted on March 29, 2005, the Utilization Review Committee ("URC") had reviewed a neurological surgery request and had deferred determination pending receipt of another physician's second opinion. Samuels stated that according to the treatment plan resulting from the second opinion, the plaintiff was instructed to undergo a three-month evaluation in the Orthopedic Chronic Care Clinic and to observe "recreation restrictions, labs, medication, and a recommendation of a medical transfer to medical facility for surgery." [*Id*.]

### 3. BP-10 Response from the MARO

On May 9, 2005, the plaintiff submitted to the BOP's Mid-Atlantic Regional Office ("MARO") a BP-10 "Request for Administrative Remedy." On June 6, 2005, K. M. White, Regional Director of the MARO, responded to and denied the plaintiff's BP-10 Request. He noted that the plaintiff had a long history of lower back-related complaints. In denying the BP-10 Request, White offered the following chronicle of the plaintiff's medical treatment at FCI-Manchester.

On August 4, 2004, the plaintiff underwent an MRI of his lumbar spine, the results of which revealed a herniated disc at the L5-S1 level. On December 7, 2004, a "contract" neurosurgeon examined the plaintiff. Following that examination, "a consultation referral for surgical repair of the plaintiff's lower back was completed."[2] On March 29, 2005, the URC reviewed the surgical

---

[2] White did not identify who completed the "consultation referral for surgical repair of the plaintiff's lower back." It would appear, however, that the "contract" neurosurgeon who examined the plaintiff on December 7, 2004, completed the consultation referral and recommended that the plaintiff undergo surgery.

4

repair request and decided that a second opinion was warranted. On April 12, 2005, the plaintiff underwent examination for a second opinion by another physician. The results were "recommendations for treatment to include recreation restrictions, labs, medication, and a recommendation of a medical transfer to medical facility for surgery." [*Id.*]

White then noted that on May 19, 2005, the request for the plaintiff's surgical transfer was submitted to the BOP's Health Services/Medical Designations division for review and consideration. At the time of White's denial, the surgical request was still pending. White informed the plaintiff that if the transfer was approved, arrangements would be completed. White concluded that the medical plan of care which had been offered to the plaintiff was "appropriate and complete." He closed his response by stating as follows: "Your condition has been thoroughly reviewed and request for surgical repair is currently pending approval. There is no evidence to support your request for immediate surgical treatment for your condition. . . ." [White Response, 6/6/05]

4. BP-11Response from Central Office

On June 15, 2005, the plaintiff submitted to the BOP's Central Office a BP-11 "Request for Administrative Remedy." He claimed that his pain and suffering was due to medical neglect in receiving surgery for severe damage to his lumbar spine, and requested immediate surgery on his lumbar spine. On July 13, 2005, Harrell Watts, the Administrator of the BOP's National Inmate Appeals, issued a brief denial of the BP-11 appeal. Watts noted that plaintiff had been approved for surgery since his BP-10 had been denied on June 6, 2005. He concluded that since a consultant neurologist had performed surgery on the plaintiff's lumbar spine on July 1, 2005, the plaintiff's claim of denied medical treatment had become moot.

DISCUSSION

The plaintiff has exhausted his Eighth Amendment claims. The Court will examine the merits of the allegations contained in the complaint.

1. Official Capacity *Bivens* Claims

To the extent that the plaintiff may be asserting claims for money damages against the named defendants in their *official* capacities, those claims fail. A *Bivens* constitutional claim is only properly asserted against federal employees in their individual capacities. *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). "[A] *Bivens* claim [for damages] may not be asserted against a federal officer in his official capacity." *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) (citing *Holloman v. Watt*, 708 F.2d 1399, 1402 (9th Cir. 1983), *cert. denied*, 466 U.S. 958 (1984); *see also Schweiker v. Chilicky*, 487 U.S. 412 (1988); *Butz v. Economou*, 438 U.S. 478, 512-14 (1978)).

When damages are sought against federal employees in their *official* capacities, the damages in essence are sought against the United States, and such claims cannot be maintained. *Myers & Myers, Inc. v. United States Postal Serv.*, 527 F.2d 1252, 1256 (2d Cir. 1975); *Morris v. United States*, 521 F.2d 872, 847-75 (9th Cir. 1975). When a federal employee is sued in his or her individual capacity, the action is not a suit against the United States. *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985). Because the only proper defendant in a *Bivens* claim is a person acting under color of federal law in that person's *individual* capacity, the plaintiff has failed to state a claim upon which relief can be based against the named defendants in their *official* capacities. The Court dismisses, with prejudice, the plaintiff's Fifth and Eighth Amendment constitutional claims against the defendants in their *official* capacities.

### 2. Individual Capacity Eighth Amendment *Bivens* Claims Against Charles Samuels; "T." Martin, and "N." Shah

The plaintiff alleges that Defendant Charles Samuels, the Warden of FCI-Manchester; "T." Martin, the Assistant Warden of FCI-Manchester; and "N." Shah, Health Service Administrator of FCI-Manchester, are liable to him for the decisions of the medical staff at FCI-Manchester relating to his medical treatment, and/or the lack of medical treatment. He alleges that these defendants, in their supervisory capacities, had an obligation to ensure that the subordinate officials at FCI-Manchester acted in a manner which protected his rights under the Eighth Amendment.

Although the plaintiff listed these three individuals as defendants, he made no specific mention of these individuals when he described the specific actions about which he complains. He did not refer to their involvement in any manner. Samuels is the warden of FCI-Manchester, and he denied the plaintiff's BP-9 appeal. Other than that action, the plaintiff did not allege that Samuels was in any way involved in the medical decisions and/or the alleged medical delay affecting him. The plaintiff did not mention Defendant Martin as having any direct or personal involvement with the decisions about which the plaintiff complains (denial of adequate medical treatment in violation of the Eighth Amendment). Although the plaintiff stated that Shah was the Health Service Administrator of FCI-Manchester, he did not allege that she was personally involved with the decisions affecting him, such as when he would undergo an MRI test, or surgery.

Construed broadly, the plaintiff's claims against Samuels, Martin and Shah fall under the doctrine of *respondeat superior*. However, the doctrine of *respondeat superior* cannot provide the basis for liability under *Bivens*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95, (1978); *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir.1995) (per curiam); *Jones v. City of Memphis*, 586

F.2d 622, 624- 25 (6th Cir.1978).

A claim under *Bivens* requires a showing that the named defendant performed the acts that resulted in a deprivation of a constitutional right. *See Rizzo v. Goode*, 423 U.S. 362, 375-76, 96 S.Ct. 598 (1976); *Bivens*, 403 U.S. at 390 n.2; *Williams v. Mehra*, 135 F.3d 1105, 1114 (6th Cir.1998). Liability under *Bivens* is personal and based upon each defendant's own constitutional violations. *Trulock v. French*, 275 F.3d 391, 402 (4th Cir. 2001); *see also Williams v. Faulkner,* 837 F.2d 304, 308 (7th Cir. 1988); *Boyce v. Alizudah*, 595 F.2d 948, 953 (4th Cir. 1979).

The plaintiff must allege and prove that Samuels, Martin and Shah personally condoned, encouraged, or knowingly acquiesced in the alleged unconstitutional misconduct. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam). The plaintiff did not allege these facts.

To the extent that the plaintiff may be alleging that Samuels violated his constitutional rights by rejecting his BP-9 administrative grievance, he asserts a construed due process claim under the Fifth Amendment of the United States Constitution. That claim must be dismissed, because there is no inherent constitutional right to an effective prison grievance procedure. *Hewitt v. Helms*, 459 U.S. 460, 467, 103 S. Ct. 864 (1983); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. Cir.1991).[3]

---

[3]

There are numerous Sixth Circuit cases which also hold that there is no inherent constitutional right to an effective prison grievance procedure. *Argue v. Hofmeyer*, 80 Fed.Appx. 427, 430 (6th Cir. (Mich.) October 30, 2003) (Not selected for publication in the Federal Reporter); *Overholt v. Unibase Data Entry, Inc*. 221 F.3d 1335, 2000 WL 799760, **3 (6th Cir. (Ohio) June 14, 2000) (Unpublished Disposition) (" In addition, Overholt did not state a viable First Amendment claim concerning the prison grievance procedure. The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991). Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation."); *Mays v. Wilkinson*, 181 F.3d 102 (Table), 1999 WL 282690 (6th Cir.(Ohio) April 28, 1999) (same.)

### 3. Individual Capacity Eighth Amendment *Bivens* Claims Against Dr. Ramirez

#### A. Claims Arising Between October 17, 2003 and September 1, 2004: Statute of Limitations

The plaintiff alleged in his complaint that he began seeking medical treatment from Dr. Spady on October 17, 2003, at which time Dr. Spady recommended that he undergo an MRI. He alleges that Dr. Ramirez denied that request a month later on November 25, *2003*. He further complains about delays in his complaint that occurred in February and June of *2004*. Those claims, are, however, time-barred. *Bivens* claims have a one-year statute of limitations under Kentucky law. *See Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003); *McSurely v. Hutchison*, 823 F.2d 1002 (6th Cir.1987). Kentucky's one-year statute of limitations is set forth in K. R. S. §413.140(1)(a) and applies to civil rights claims arising in Kentucky. *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir.1990).

Where an applicable statute of limitations defense is obvious from the face of the complaint, *sua sponte* dismissal of the complaint is appropriate. *See Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir.1995); *Paige v. Pandya*, 238 F.3d 423, 2000 WL 1828653 **1(6th Cir.(Mich.)) (Unpublished Disposition); *Alston v. Tennessee Dept. of Corrections*, 28 Fed. Appx. 475, 2002 WL 123688 (6th Cir.(Tenn.)). The plaintiff did not raise these claims until he filed the instant complaint, on September 1, *2005*. Accordingly, these claims are dismissed as frivolous. 28 U.S.C. §1915(e)(2)(i).

#### B. Claims Between September 1, 2004 and December 20, 2004: Failure to Administratively Exhaust

It is not disputed that the plaintiff underwent an MRI on August 4, 2004. The plaintiff did not initiate the three-step BOP administrative remedy process until March 29, 2005. In his BP-9

Request to the Warden (filed on March 29, 2005), he complained only about the alleged delay in treatment starting on or after December 20, *2004*, over a year *after* he claims that Dr. Ramirez improperly denied the recommendation for an MRI test. To the extent that the plaintiff may be asserting claims based on action or inaction occurring between September 1, 2004, and December 20, 2004, the plaintiff has not demonstrated that he exhausted claims which might have accrued during that time period. The plaintiff produced no documentation establishing that he administratively exhausted his claim that Dr. Ramirez was deliberately indifferent to his serious medical needs between September 1, 2004, and December 20, 2004.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires state and federal prisoners bringing actions concerning prison conditions (this includes any other incident to prison life, such as excessive force) to exhaust all available administrative remedies before suing in federal court. The United States Supreme Court issued an opinion four years ago clearly mandating that exhaustion of administrative remedies is required for *all* prisoner suits. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983 (2002) 534 U.S. at 524 (emphasis added); *see also Garfield v. Federal Prison Industries*, 3 Fed. Appx. 292, 2001 WL 921137 (6th Cir. (Ohio) January 26, 2001) (Not recommended for full-text publication) (Pursuant to 42 U.S.C. §1997e(a), the §1997e exhaustion requirement applies to *Bivens* actions brought by federal prisoners, even if they seek both equitable and monetary relief) (emphasis added).

In order to meet the exhaustion requirement of the PLRA, a prisoner must either attach a copy of his prison grievance forms to the complaint or state the nature of the remedies pursued and the result of each process. *See Knuckles-El v. Toombs*, 215 F.3d 640, 642 (6th Cir.2000); *Jones v. Bock*, 2005 WL 1400205, *1 (6th Cir.(Mich. June 15, 2005) (Not selected for publication in the Federal

Reporter). Unless the record demonstrates that the requirements of §1997e(a) have been met, a district court is required to dismiss an action without prejudice. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.), *cert. denied*, 119 S. Ct. 88 (1998). The burden is on the plaintiff to demonstrate exhaustion of his administrative remedies *prior* to filing the lawsuit. *Id.*

For any issue the plaintiff intends to raise, he must demonstrate exhaustion, or his attempts at exhaustion, before he can be considered to have substantially complied with the law. *See Wyatt v. Leonard*, 193 F.3d 876 (6th Cir. 1999). In *Wyatt*, the court concluded that the plaintiff in that case had made an adequate showing that he had attempted to comply with administrative remedies, because he had attached numerous letters he had filed and other persuasive documents. In contrast, the instant plaintiff has failed to establish that he exhausted his Eighth Amendment claims alleged to have occurred between September 1, 2004, and December 20, 2004.[4] To the extent that the plaintiff alleged in his complaint (filed on September 1, 2005) about alleged actions occurring between September 1, 2004, and December 20, 2004, he has failed to administratively exhaust those claims. His BP-9 did not address any alleged medical inaction arising *prior* to December 20, 2004.

## C.  Claims Arising After December 20, 2004: Failure to State a Claim

Even had the plaintiff exhausted claims against Dr. Ramirez which allegedly arose between September 1, 2004, and December 20, 2004, the Court would still be hard pressed to find that any constitutional violation had occurred. The plaintiff complains that Dr. Ramirez unreasonably delayed the authorization of an MRI test despite a recommendation from Dr. Spady that the test was

---

[4] The plaintiff mentions having filed a BP-8 in June of 2004, but does not refer to having filed a subsequent BP-9, BP-10, or a BP-11. In any event, as discussed, claims stemming from June, 2004, would still be barred by the one-year statute of limitations.

11

needed. Plaintiff alleges that the delay in undergoing the MRI ultimately led to the worsening of his (plaintiff's) lumbar spine condition. The record refutes these allegations.

In order to state a cognizable claim under the Eighth Amendment regarding medical care, a prisoner must show both "deliberate indifference" and a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To substantiate an allegation of deliberate indifference, a prisoner must establish that the deprivation was sufficiently serious *and* that officials acted with a sufficiently culpable state of mind. *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

Eighth Amendment claims contain both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321 (1991); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir.2005) ("A claim for the deprivation of adequate medical care 'has two components, one objective and one subjective.'") (internal citation omitted); *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir.2004) (same); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir.2001) (same).

Under the objective component, a plaintiff must establish the "existence of a 'sufficiently serious' medical need." *Estate of Carter v. City of Detroit,* 408 F.3d 305, 311 (6th Cir.2005); *Blackmore*, 390 F.3d at 895 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1974)); *Comstock*, 273 F.3d at 703. Under the subjective component, the claimant must show that the defendant possessed "a sufficiently culpable state of mind," *Estate of Carter*, 408 F.3d at 311, such that the defendant knew of but nonetheless disregarded the claimant's serious risk of harm.

The subjective component requires the plaintiff to demonstrate that prison officials acted wantonly, with deliberate indifference to the plaintiff's serious medical needs. *Farmer v. Brennan*, 511 U.S. at 834. Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice. *Id*. at 835-36. Deliberate indifference has also been defined

12

as "more than mere negligence, but 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Foy v. City of Berea*, 58 F.3d 227, 232 (6th Cir. 1995) (quoting *Farmer v. Brennan*).

To the extent that surgery was ultimately recommended for the plaintiff's lumbar condition, the facts suggest the existence of a sufficiently serious medical need. Thus, the plaintiff satisfied the objective component of his Eighth Amendment claim.

Based on the sequence of events concerning the plaintiff's medical treatment, however, the Court is unable to conclude that the plaintiff satisfied the subjective component of his Eighth Amendment claim. The responses to the plaintiff's various administrative appeals, which commenced on March 29, 2005, clearly reflect that the plaintiff was afforded ongoing medical treatment which culminated with the surgery the plaintiff requested.

The record reflects that after undergoing an MRI test, which revealed the existence of a herniated disc at L5-S1, the plaintiff was examined on December 7, 2004, by a doctor who recommended surgery. The plaintiff did not file his BP-9 until March 29, 2005, but he complained of alleged delays in his medical treatment reaching back some three months, to December 20, 2004. By the time Warden Samuels received the plaintiff's BP-9 Request (dated March 29, 2005), he responded that on March 29, 2005, the URC had in fact reviewed the first request for surgery.[5]

The URC determined that a second opinion was needed, and the plaintiff was then scheduled to submit to a second doctor for the purpose of obtaining a second opinion. Three months later, the

---

[5] The BOP did not explain the reason for the three-month lapse in activity. Conceivably, it could have taken the physician who performed the initial evaluation on December 7, 2004, some time to review the plaintiff's records, his notes, test results, and prepare his report to the URC. Additionally, it may have taken the URC substantial time to consider and evaluate the doctor's report and recommendations.

13

URC decided a second opinion was warranted, and the plaintiff promptly underwent that second evaluation on April 12, 2005. The plaintiff received the result he wanted (surgery) and underwent the surgery three months later, on July 1, 2005.

Given this history of medical treatment, the plaintiff's claim that Dr. Ramirez was deliberately indifferent to his serious medical needs lacks merit. The records indicate only a three-and-a-half-month lapse of activity between December 7, 2004, and March 29, 2005. First, there is nothing to attribute the three-month delay to *Dr. Ramirez*. Second, the Court cannot conclude that a three-month delay constituted deliberate indifference to the plaintiff's lumbar spine condition, from which he had suffered for many years. Third, the BOP's decision on March 29, 2005, to seek a second opinion was justified. It is a common practice in the private sector for insurance companies to demand a second opinion where a serious medical procedure appears to be necessary.

Here, there is no evidence of any substantial delay in medical treatment, and certainly no indication that Dr. Ramirez acted wantonly, or that he possessed "a sufficiently culpable state of mind," and that he "knew of but nonetheless disregarded [the plaintiff's] serious risk of harm." *Estate of Carter*, 408 F.3d at 311. There is nothing in this record which suggests that Dr. Ramirez exhibited deliberate indifference--previously defined as the *reckless disregard* of a substantial risk of serious harm--to the plaintiff's lumbar condition. On the contrary, the record indicates that from February, 2004 forward, he responded to the plaintiff's needs in a professionally responsible manner.

In all instances, it appears that the plaintiff was not satisfied with the reasoned medical solutions offered to him. It is not that the plaintiff was not offered medical care so much as it is that the plaintiff alleged that the medical services were not offered quickly enough to suit him. When a plaintiff claims deliberate indifference to his serious medical needs, but he alleges only a difference

of opinion between him and the doctor regarding diagnosis and treatment, he states no claim. *Estelle v. Gamble*, 429 U.S. 97,107 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).[6]

The plaintiff has, at the most, set forth an argument over the speed at which he received medical treatment at FCI-Manchester. The plaintiff has not established *deliberate* indifference to his medical condition, nor has he established that Dr. Ramirez possessed a culpable state of mind. As noted, a dispute over the adequacy of medical care rendered to a prisoner generally does not rise to the level of an Eighth Amendment violation. *Westlake v. Lucas*, 537 F.2d at 860 n.5. Under the relevant facts, the plaintiff has not asserted grounds authorizing the Court to deviate from this rule.

Finally, to the extent that any delay could be attributed to mere medical negligence, the plaintiff may have a claim he can assert in state court, but not in this Court.[7] Allegations of medical malpractice or negligent diagnosis and treatment are not cognizable under §1983. *See Estelle v. Gamble*, 429 U.S. at 106; *Birrell v. Brown*, 867 F.2d 956,958 (6th Cir. 1989). Even if mistakes in diagnosis and treatment are made, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

Accordingly, the plaintiff's Eighth Amendment medical claims against Dr. Ramirez, from December 20, 2004 forward, fail to state a claim upon which relief can be granted, and are dismissed

---

[6] There are numerous unpublished Sixth Circuit opinions which adopt *Westlake v. Lucas*' holding that where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and to constitutionalize claims which would sound in state tort law. *See Wilson v. Wilkinson*, 62 Fed. Appx. 590, 2003 WL 1795812 (6th Cir. (Ohio) April 1, 2003) (Not selected for publication in the Federal Reporter); *Wooley v. Campbell*, 63 Fed. Appx. 789, 2003 WL 1795708 (6th Cir. (Tenn.) March 27, 2003); *Wright v. Sapp*, 59 Fed. Appx. 799, 2003 WL 1465184 (6th Cir. (Ky.) March 17, 2003); and *Simpson v. Ameji*, 2003 WL 236520 (6th Cir. (Ky.) January 30, 2003).

[7] Federal courts do not have jurisdiction over actions regarding "duties that are analogous to those traditionally imposed by state tort law." *Lewellen v. Metropolitan Govt., et al.*, 34 F.3d 345, 351 (6th Cir. 1994) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (citations omitted)).

with prejudice. 28 U.S.C. §1915(e)(2)(ii).

## CONCLUSION

Accordingly, **IT IS ORDERED** that this action is **DISMISSED**, *sua sponte*, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named defendants.

Dated this 2nd day of February, 2006.

Signed By:
*Karen K. Caldwell* KKC
**United States District Judge**